May it please the court, my name is Kelsey Beckner and I represent Mr. Patrick Thiongo, a native and citizen of Kenya, and Mr. Thiongo is actually present in this courtroom today. I would like to reserve two minutes for rebuttal. The petitioner in this case is asking that his petition be granted and his case be remanded on an open record because the immigration judge's adverse credibility determination and the board's review of that determination was not supported by substantial evidence. First, the adverse credibility determination based on inconsistencies was not supported by substantial evidence because the immigration judge failed to provide specific and cogent reasons for rejecting the petitioner's explanation for the alleged inconsistencies. I first of all would like to discuss the case Soto Olarte v. Holder, which is directly on point to Mr. Thiongo's case. In that case, as in this case, the IJ, the immigration judge, did not comment on the petitioner's explanation nor suggest any reason that she found the petitioner's explanation was not credible. In that case, this court found that the lack of consideration given to the proffered explanation was error and prevents the underlying inconsistency from serving as substantial evidence to support the IJ's adverse credibility finding. Similarly, Soto Olarte's review of the BIA decision is instructive. In Soto Olarte, the court found error where the board did not give its reasons for considering the petitioner's explanation unpersuasive and found the BIA did not address the petitioner's explanation in a reasoned manner. In this case, the board held that the record reflects that the immigration judge provided specific and cogent reasons for rejecting Mr. Thiongo's explanations. The board does not state, though, where or how it found these specific and cogent reasons provided by the IJ immigration judge when simply none were provided in the immigration judge's decision. For that reason, the board's conclusion is simply not supported by the record and thus not supported by substantial evidence. Second, the immigration judge's and BIA's holdings that Mr. Thiongo's documentary corroborative evidence did not overcome the prior inconsistencies is not supported by substantial evidence. The immigration judge basically concluded that the documentary evidence submitted by Mr. Thiongo could not overcome the prior inconsistencies because those, the authors of those documents were not available for cross-examination. I believe that this conclusion by the immigration judge violates this court's decision, Zhu v. Gonzales, where the IJ found that it was error for an immigration judge to base an adverse credibility determination on an applicant's inability to obtain corroborating affidavits, and even more inappropriate for the IJ to support his adverse credibility determination was Zhu's inability to obtain live testimony from persons abroad. Furthermore, the immigration judge gave no other information about why that documentary evidence was not sufficient or why, whether there was any evidence underlying its reliability. The immigration judge furthermore gave Mr. Thiongo no notice that cross-examination of the authors of those documents were necessary, which I believe is in violation of Ren v. Holder, which requires the immigration judge to give notice and an opportunity for the petitioner to provide, to provide that information as required. Finally, the immigration judge did not apply, in sum, the proper standard in his adverse credibility determination. In addition to not considering Mr. Thiongo's explanations, he also didn't consider other issues that were raised by Mr. Thiongo. He didn't consider the health issues that he raised. He didn't consider his other consistent testimony and other evidence that he submitted that was consistent. Can I ask you a question about the asylum application? Yes. Why isn't the, why aren't the IJ and the BIA right in saying that the asylum application at least is untimely? Even if we were to agree with you on the adverse credibility determination. Seems to me that that's, he presented no legitimate reason for delaying in filing that. And so why wasn't the agency correct in that ruling? Well, I believe that Mr. Thiongo did present evidence supporting exceptions to the one year deadline. And in particular, as it relates to extraordinary circumstances. His health, right. Yeah, well, he also did state in his asylum application that he was traumatized and that he was suffering from some type of health condition. And he did provide some testimony about that in. But the health, remind me of the health issues. I remember like, I don't know if it was like high blood pressure or. It wasn't disabling health issues such that you couldn't bring yourself to file an application. I just, it seemed to me that probably everybody who eventually makes their way to the United States claiming asylum could claim some adverse health effects, right? So I don't know, I just wanted to hear more from you about that. And I do believe that the health documents submitted were not necessarily the most convincing part of the documents that he submitted. I believe actually the fact that he said he was traumatized multiple times were enough of a trigger for the immigration judge to look at whether he had satisfied the extraordinary circumstance exception for filing an application beyond the one year deadline. He could have explored it further with Mr. Thiong'o and actually cited to that in his decision. But he didn't cite to it in his decision at all. It appears from his decision that he didn't even consider that even though Mr. Thiong'o stated in his I-589 that that was one of the reasons he didn't file his asylum application sooner. In addition to extraordinary circumstances, Mr. Thiong'o presented evidence of additional events that had occurred in Kenya that showed that there were changed circumstances. And unfortunately, again, the immigration judge did not refer to all of the evidence that Mr. Thiong'o presented. Are you talking about the beating up of his brother? Is that what you're alluding to? Yes, and also- But again, he didn't file until 17 months after that. It's a year and a half. Is it your position that that traumatized him also? Yes, it is. And as well as the fact that he testified that his colleagues and co-workers had been reporting to him that they'd been getting inquiries about him. And it was really all of these events that the immigration judge should have considered in determining whether he met this exception to the one year deadline. But he only considered the fact that Mr. Thiong'o's house was burned down after the 2008 election and violence after that in Kenya. So I think it was an error on the immigration judge's part to not consider all of that evidence in determining whether he met an exception to the one year deadline. Counselor, you're down to about two minutes. It's entirely up to you, but would you like to reserve some? Yes, I would. Thank you. We will now hear from Ms. Donahue on behalf of the government. Give me a tissue. May it please the court, I'm Lindsay Donahue on behalf of the Attorney General. The petitioner challenges the agency's adverse credibility and asylum untimeliness determinations. But these determinations are supported by substantial evidence for two reasons. First, Mr. Thiong'o's credibility was marred by key discrepancies that he failed to reconcile with reasonable and plausible explanations. And second, Mr. Thiong'o cannot demonstrate eligibility for application over three years out of time and did not demonstrate he was established an exception to the deadline. Counsel, let me cut to the chase, if I may, on the main issue of concern to me. Yes, Your Honor. And that is whether the IJ satisfied the law as we described it in the Soto Alarte decision by not giving a statement as to why he rejected Mr. Thiong'o's explanation of his inconsistencies. Well, in Rizk v. Holder, which was decided about two years after Soto Alarte, this court explained the requirements for an immigration judge's consideration of acknowledges in his opening brief, if the applicant offers a reasonable and plausible explanation for an apparent discrepancy, the immigration judge must provide a specific and cogent reason for rejecting it. But if the alien fails to provide a plausible explanation, the immigration judge may properly rely on the inconsistency as support for an adverse credibility determination. In Soto Alarte, the petitioner's case was premised on an alleged home invasion by cult members. But he provided evidence of a police report that did not mention cult members at all. When asked to explain this discrepancy, the petitioner offered a substantive, plausible explanation that the police were loathe to get involved with the cults and wouldn't want to mention them in the police reports. The agency in that case had something to probe into with that explanation. But they did not. They did not explain why they rejected the explanation or even comment on it in their decision. And so this court concluded that it was improper. In Rizk v. Holder, a situation more akin to what we have here, the petitioner did not offer a substantive explanation that gave the agency something to probe into. In that case, the petitioner offered excuses for his discrepancies, explaining there must have been some kind of translation error or he didn't recall. In that case, the immigration judge faithfully acknowledged and recited those explanations in her decision, but ultimately concluded he was not credible. And this court supported that determination, explaining that because Rizk did not offer a reasonable and plausible explanation, the contradictions that IJ relied on were proper. And that the IJ was not required to give an express point-by-point rejection of those explanations. In this case, we don't have substantive explanations that the agency can delve into. Mr. Thiong'o offered superficial excuses. He said that he confused his testimony because he just misspoke, even though he misspoke four times, including once after his explanation. Or that he neglected to mention a significant portion of his claim, because he chose not to. The agency was not required to accept these explanations, and they ultimately did not do so. And this is understandable in light of the seriousness of his discrepancies. Mr. Thiong'o's claim was based on a political asylum. He was an activist against the political agenda of the Mungiki group. He claimed that as a result of that political activism, that he was harmed, that he was assaulted by people who he believed were Mungiki. In his asylum application, he stated this happened only weeks before coming to the United States. And only weeks before finding out that someone had interrogated his wife about his whereabouts. But in his testimony before the immigration judge, he claimed that this occurred in 2004, years before he came to the United States. And his explanation was simply that he had misspoken. A reasonable adjudicator could conclude that this type of discrepancy was indicative of the truthfulness of his account. And Mr. Thiong'o doesn't offer anything to explain why any reasonable adjudicator would be compelled to conclude to the contrary. And again, in his asylum application, his political asylum application, he claimed that he was the victim of political clashes over a span of two decades. And yet did not mention this in his testimony to the immigration judge. His explanation was simply that he chose not to. A reasonable adjudicator could again conclude that perhaps this goes to the truthfulness of his claim when he forgets to mention four incidents in which his family was displaced, his property was destroyed. These are key serious discrepancies to his claim. But your position is that the explanations offered just don't rise above a certain threshold of plausibility such that the IJ was required to give some kind of an explanation for finding him not credible? Yes, your honor. When this court is looking at an agency's decision, it's looking for reasoned consideration. That the agency thought and heard, it did not merely react. In a case like Stoto-Olarte, where there is a plausible and a substantive explanation, when the agency does not explicitly address that explanation or even comment on it, it's difficult to parse out what exactly the agency was thinking. But in a case like this one, where the explanations are simply I chose not to or I misspoke. There's not much for the agency to delve into here. Their reasoning is fairly apparent on its face. Can I ask you about the asylum claim? Yes, of course. So the BIA says in its decision, I'm just looking at, I guess it's AR3. It says the respondent now alleges his failure to file a timely asylum application was due to health related issues, including high blood pressure and diabetes. But this is the part I'm focused on. But he did not provide this as a reason before the immigration judge. And it seems to me that's just flat out incorrect, that he most definitely did mention. I think it was in, I can't remember, it was in the affidavit that, right? But he specifically said, one of the reasons why I was not able to file on time was because of these health issues. So I didn't know what to make of the BIA's error in that respect. Is that fatal to upholding the decision? No, Your Honor. You are correct that in his affidavit, in his asylum application, he did mention his health problems. Before the immigration judge, he clarified his response to explain that his health problems were not a deterrent to his application, but actually were the reason that prompted him to come and apply at all. He explained, excuse me, that he couldn't get help for his illness without coming forward and explaining his problems on page 101 of the record, and he subsequently decided to apply for asylum. He doesn't explain, even now, how his health actually deterred him from applying, especially given, as you noted earlier, that the medical records seem to be relatively well-controlled conditions. In fact, the medical report says well-controlled hypertension and benign prostate hypertrophy. And to the extent he now claims before the court that he had a mental disability, that he was traumatized, Mr. Thiong'o never made that claim in his testimony. In fact, when asked about all of the events that he now suggests led to some sort of trauma, he never once talked about feeling a trauma, and he never explains how that prevented him from filing for asylum. This was his burden to overcome, and Mr. Thiong'o simply hasn't met it. If there are no further questions, I will conclude. No questions here. Hearing none, I think we can thank you for your argument. Thank you. The government urged this court to find that Mr. Thiong'o's, the adverse credibility determination of Mr. Thiong'o's, by the immigration judge of Mr. Thiong'o's case, was supported by substantial evidence because Mr. Thiong'o only made superficial excuses and did not provide a reasonable explanation, if that was the case, the immigration judge could have said that. But he didn't say that. So I believe that what the government is urging you to do is read into the record something that simply doesn't exist. The immigration judge, he did recite the fact that Mr. Thiong'o mistakenly said 2004 instead of 2007, but he didn't say that he found Mr. Thiong'o's claim to be false. Furthermore, the fact that Mr. Thiong'o didn't talk about the earlier events that had happened to him is also not supported by substantial evidence because if he had talked about them in his testimony, it would have enhanced his claim. By failing to talk about those earlier events, he actually detracted from his claim. So the immigration judge's reliance on that alleged inconsistency is further evidence that it's not supported by substantial evidence. And I wanted to cite to the record a point where Mr. Thiong'o did talk about how he was traumatized, but I was not able to find that in the period of time. But I do believe that Mr. Thiong'o did talk about that in his testimony, and I cited to it in my brief. Thank you very much. Thanks, we will look for that in your briefing, and we'll check through the record. So I thank Ms. Donahue and Ms. Beckner for their fine arguments. In the case of Thiong'o versus Sessions, shall be submitted.
judges: Gould, Watford, Rothstein